## DE STUBNER v. UNITED CARBON CO.
### et al.
### Civil Action No. 481.

District Court, S. D. West Virginia.
July 7, 1945.

Ben O. Shepherd, of Detroit, Mich., and Charles M. Love, Jr., of Charleston, W. Va., for plaintiff.

Rummel, Blagg & Stone, of Charleston, W. Va., for defendants.

MOORE, District Judge.

Plaintiff has brought this action against the defendants seeking to recover alleged royalties claimed to have accrued by reason of defendants' use of plaintiff's inventions, patents, processes and discoveries in the field of carbon black, this being a

product manufactured and sold by the defendants.

Plaintiff alleges his ownership of certain patents, inventions, processes and discoveries relating to methods of treating raw carbon black, which change it from a powder to a dustless form; methods of producing pulps and dispersions of carbon black, and discoveries of practical uses of certain mechanical equipment in defendants' industry.

It is alleged that on or about May 1, 1934, plaintiff executed an option agreement with United Carbon Company (hereinafter called "United") giving United the exclusive option for a period of one year to obtain a license to use plaintiff's patents, inventions, processes and discoveries; and that this option was extended until July 31, 1936.

It is alleged that on March 25, 1935, a subsidiary company, United Carbon Company, Inc. (hereinafter referred to as "United, Inc."), was incorporated with the same officers and directors as United; and that on July 31, 1936, United, Inc., exercised the option theretofore granted to United.

As a part of the transaction it is alleged that de Stubner and United, Inc., caused a corporation to be organized known as Microid Process, Inc. (hereinafter called "Microid"); that de Stubner granted the license provided for in the option agreement, to Microid, and Microid in turn granted a sub-license to United, Inc.; that Microid's stock was divided into Classes "A" and "B," of which ownership of all the "A" stock was vested in de Stubner, and all the "B" stock in United, Inc.; that de Stubner, by the license agreement to Microid, agreed to serve as director of technical research for a period of five years, receiving no salary, but reserving the right to terminate his employment whenever dividends on the "A" stock should amount to less than $7,500 during the first year and $12,000 thereafter, the "A" stock being given preferential rights to that extent over the "B" stock; that it was further provided in the license to Microid that in event of failure to pay the preferential dividends mentioned, or the bankruptcy or insolvency of Microid, the license to Microid might be terminated, but that any sub-license then in effect should remain valid, and that de Stubner should be substituted as licensor in any such sub-license, with the further provi-

sion that royalties to be paid to de Stubner should be reduced to one-third of the sum provided for in the sub-license between Microid and United, Inc.; that the sub-license from Microid to United, Inc., provided no fixed rate of royalties, but set forth certain principles upon which the rate of royalty should be based, and left the precise rate to be determined by agreement between the parties, and on failure of the parties to agree, provided for a decision by arbitration, which decision would be binding upon the parties.

It is alleged that the original agreement between de Stubner and United provided for a period of demonstration by de Stubner of his patents and inventions, during which period de Stubner should receive $150 per week; and that pursuant to this provision de Stubner spent his entire time for a period of two years and three months in connection with such demonstration. It is further alleged that the license agreements were to cover all patents, inventions and discoveries in this field theretofore or thereafter made by the licensor, and that the licensee agreed to disclose, and at licensor's request, to assign to it, all inventions, improvements, secret processes, formulas or discoveries relating to or useful in the exercise of the license.

The agreements set out in the complaint contained many other provisions, but those referred to seem to comprise all that are material in the present litigation.

It is further alleged that de Stubner, some time prior to July 19, 1941, instituted a suit in chancery in the Circuit Court of Kanawha County, West Virginia, against Microid, United and United, Inc., praying for a cancellation of both the license to Microid and the sub-license to United, Inc.; that the Circuit Court on July 19, 1941, entered its decree cancelling both the license and the sub-license; and that on appeal to the Supreme Court of Appeals of West Virginia, the action of the Circuit Court in cancelling the license to Microid was affirmed, but that part of the decree cancelling the sub-license to United, Inc., was reversed, and that de Stubner thereby became licensor in the sub-license to United, Inc., as of August 1, 1942, that being the effective date of the decision of the Supreme Court of Appeals of West Virginia.

While no mention is made in the complaint of any subsequent litigation, refer-

ence to the reports of the Supreme Court of Appeals of West Virginia discloses that on December 7, 1943, that court rendered a decision in the case of De Stubner v. United Carbon Co., Inc., and Microid Process, Inc., 28 S.E.2d 593, 597, wherein de Stubner was given a judgment for $625 a month for a period ending July 31, 1942. This decision refers to an agreement dated July 12, 1938, between de Stubner and Microid (not mentioned in the complaint), which agreement seems to have modified the provisions of the original license agreement between de Stubner and Microid by substituting a new schedule of payments to de Stubner of $625 per month to continue "until the exercise or termination of the option agreement given the Charles Hellmuth Printing Ink Corporation under date of May 27, 1938, provided, however, that upon the exercise or termination of said option agreement, the schedule of payments specified in * * * said agreement of July 31, 1936, shall be reinstated as of the date of the exercise or termination of said option agreement." It does not appear from any of the pleadings in the case before me whether or not this Hellmuth option (not mentioned in the complaint) has been exercised or terminated, but I interpret the decision of the Supreme Court of Appeals as meaning, although it is not stated in so many words, that the $625 monthly payment was awarded to de Stubner pursuant to the paragraph of his license agreement with Microid providing for payment of certain sums of money as dividends, or in lieu of dividends, on Class "A" stock of Microid owned by him.

It is further alleged in the complaint that the agreement of July 31, 1936, between de Stubner and United, Inc., together with the license agreement between de Stubner and Microid and the sub-license agreement between Microid and United, Inc., established a liability on United, Inc., to pay de Stubner minimum royalties of $625 per month, and that such minimum royalties have not been paid since August 1, 1942.

The sub-license agreement between de Stubner and United, Inc., exhibited with the complaint contains a provision that the licensor shall have access to any plants owned, controlled or operated by United, Inc., wherein any of de Stubner's inventions are used, for the purpose of inspecting and studying processes, and securing samples of products.

The motion of defendants for a more definite statement and a bill of particulars is based on their contention that the allegations of the complaint are so indefinite and uncertain that defendants are unable properly to prepare answers thereto, or to prepare for trial thereunder. They say, first, that it does not appear from the complaint whether United is joined as a defendant merely for purposes of discovery, or to answer a claim for asserted royalties due to de Stubner. They ask that plaintiff be required to state which form of relief he is seeking against United, and if he is seeking discovery only, that he specify the information sought, and if he intends his allegations to constitute a claim for royalties, that he state the contractual basis for such claim.

Secondly, defendants ask that plaintiff be required to specify which particular patents, inventions, processes and discoveries he claims are being used by the defendants or either of them, and on which he founds his claim for royalties. This request is based on the fact that the schedule of patents, patent applications and patent applications docketed but not filed, attached to the bill of complaint, comprises some forty-six different items, and there is no allegation in the complaint specifying which of the numerous patents, inventions, discoveries and processes are being used by the defendants or either of them so as to entitle plaintiff to royalties.

Thirdly, in view of the decision of the Supreme Court of Appeals of West Virginia fixing August 1, 1942, as the date when plaintiff was substituted for Microid as licensor, defendants ask that plaintiff state whether he claims royalty for any period prior to that date, and if so, to give the source of his claim.

Fourthly, also in view of the decision of the Supreme Court of Appeals of West Virginia, defendants ask that the plaintiff be required to state whether he makes any claim for $625 per month against United, and if so, to state what agreement or agreements constitute the basis of such claim.

I will now take up and dispose of defendants' motion in the order in which the several requests are made.

■ 1. It is clear that the plaintiff seeks relief against both the defendants; that is, he claims royalties under the sub-license agreement from United, Inc., and he makes a like claim against United on

the ground that United, being the parent corporation of which United, Inc., is a wholly owned subsidiary, has also made use of his patents, inventions, processes and discoveries. United, being in the business of producing and selling carbon black, is in a peculiarly advantageous position to know whether or not it has engaged in such use. A denial of any such use would require the plaintiff to prove the use, and to that end he would have available the discovery processes set out in Rules 26 to 37 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Whether plaintiff's claim is based on a licensing contract or on a wrongful use by United without any contract, the result would not be different, provided use by United and the right of the plaintiff to compensation for such use be satisfactorily proved.

It is true that plaintiff alleges that it is impossible for him to determine without discovery proceedings which of the defendants have used his inventions and discoveries; but I am of opinion this allegation, together with the other averments of the complaint, is sufficient to advise United of plaintiff's claim against it.

I therefore deny the motion as to the first request.

■ 2. United, Inc., is alleged to be the licensee of all the patents, discoveries, inventions and processes listed in the forty-six different items of the schedule exhibited with the complaint. As I interpret the complaint, no claim is made covering the use of any patents, processes, inventions or discoveries outside the scope of the license agreement. Here again, I am of opinion that United, Inc., must be assumed to have peculiar knowledge whether or not any of these patents, inventions, processes and discoveries, of which it is licensee, are being used in its plants, and if so, which of them are being used. United, as the parent company, may be presumed, I think, to have equal knowledge with that of its subsidiary, United, Inc.; that is to say, if United is using any of these patents, inventions, processes or discoveries in its business, it is in a position to know which are being used.

Of course, the burden is upon the plaintiff to show in this action, as in every other, the facts constituting his claim for relief, but the question now is whether or not the complaint fairly and with sufficient definiteness discloses to the defendants the basis of his claim; and I am of opinion that it does.

Therefore, defendants' second request will also be denied.

■ 3. The complaint clearly shows that royalty is claimed for the entire period during which plaintiff alleges that his patents, inventions, discoveries and processes have been used, and that the sources of his claim are the license and sub-license agreements. The provisions of the sub-license from Microid to United, Inc., are plain to the effect that in the event Microid's capacity as licensor should be terminated, the license would continue in effect with de Stubner as licensor and with royalties thereunder (at a reduced rate) payable to de Stubner. He says, in effect, that no reports have ever been made to him covering the use of his patents, inventions, discoveries and processes, and that no royalties have been paid other than what he calls "the minimum royalties of $625 per month" up to July 31, 1942.

I am therefore of opinion to deny defendants' third request.

4. I think United is entitled to know whether or not the claim for $625. per month designated by the plaintiff as minimum royalties is asserted against it or not, and if so, the source of this claim. The complaint is not entirely clear as to whether the alleged "minimum royalties" of $625 per month are claimed to be due from both the defendants or only from United, Inc. If claimed from both the defendants, no clear basis is laid in the complaint for such claim.

Therefore, I will grant defendants' fourth request.

Of course, the rulings on defendants' motion are without prejudice to the rights of any of the parties to avail themselves of such information as may be properly obtained through use of the discovery processes outlined in the Rules of Civil Procedure.

I think it proper to say here that certain aspects of the plaintiff's claim are not entirely clear. For example, in the litigation in the Circuit Court of Kanawha County, terminating with the decision of the Supreme Court of Appeals of West Virginia, reported in 28 S.E.2d 593, the matter of royalties payable under the sub-license from Microid to United, Inc., does not appear to have been taken into account; yet it was alleged that, though

Microid was insolvent, with debts aggregating more than $200,000, large payments or loans had been made to it by the licensee. Presumably, these payments or loans will enter into the accounting between the parties in the event the plaintiff is able to establish a liability against the defendants, or either of them, for unpaid royalties.

Again, the sub-license to United, Inc., provides in detail for submission to arbitration of claims for royalties arising thereunder (or, more precisely, the determination of the rate of royalties). The complaint does not allege that there has ever been a submission to arbitration, but merely that all attempts to agree upon a rate of royalty have failed.

Since these matters to which I have adverted are not covered by the motion for a more definite statement, I merely point them out here because they occur to me as transactions that must necessarily be inquired into should the other essential elements of plaintiff's claim be established.

An order may be entered in accordance with this opinion.